IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

REBECCA KOBER
Lorton, VA 22079

        Plaintiff,

v.

UnumProvident Corporation
2211 Congress Street
Portland, ME 04122

Serve: Registered Agent
       CT Corporation System
       4701 Cox Road - Suite 285
       Glen Allen, Virginia 23060-6802

        Defendant.

Civil Action No.: 22-cv-879

## COMPLAINT FOR DECLARATORY JUDGMENT AND RELATED RELIEF

COMES NOW, Rebecca Kober, Plaintiff, by and through her attorneys of record, Richard D Carter of RICHARD D CARTER, for her Complaint for Declaratory Judgment against UnumProvident, and states as follows:

### PARTIES

1. Plaintiff, Rebecca Kober, is a resident of Lorton, Virginia. She was an employee of, and a Participant in the Benefits Plans sponsored by her employer Williams and Connolly, LLP.

2. Defendant, UNUM Provident Corporation ("UNUM") is a Delaware corporation doing business in Virginia.

1

## JURISDICTION AND VENUE

3. Jurisdiction is founded upon 28 U.S.C. § 1331 and the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001 et seq. and without limitation, §1132(e). This Court also has jurisdiction pursuant to 28 U.S.C.§ 1332.

4. Venue is proper pursuant to 28 U.S.C. §1391(b) and (c) and 29 U.S.C. 1132 (e)(2).

## FACTS

5. Rebecca Kober was a billing coordinator at Williams & Connolly, LLP, a large Washington, D.C. firm known internationally as one of the finest Law Firms in the country.

6. As a benefit of employment Ms. Kober received, among other benefits, participation in a Disability Insurance Plan with UNUM Provident, policy number 06-600-007648216.

7. In 2017 she was enjoying her usual good health when she was diagnosed with Mitral Valve prolapse on February 17, 2017.

8. On March 16, 2017, she had Surgery to repair the Mitral Valve at the INOVA Fairfax Hospital. This surgery had numerous complications.

9. Her doctors documented significant post-operative bleeding required a massive transfusion and coagulopathy.

10. She also had a liver laceration and developed hemorrhagic shock, a condition produced by rapid and significant loss of blood volume, which may lead to hemodynamic instability, decreases in oxygen delivery decreased tissue perfusion, cellular hypoxia, organ damage and death.

11. She also developed compartment syndrome of the abdomen which is a fluid build-up in the peritoneal and retroperitoneal space so great that the abdomen can't stretch enough to contain it. This required an emergency decompressive laparotomy and being put on an ECMO machine, where the

2

device takes the palace of heart and lungs on March 17, 2017. She continued the ECMO for 4 more days.

12. She had a pulseless electrical arrest (PEA) where no blood was circulating, acute renal failure and a right pneumothorax requiring a chest tube placement for the collapsed lung.

13. She was also diagnosed with a multidrug resistant Enterobacteria infection.

14. On April 8, 2017, she was transferred to INOVA Mt. Vernon Hospital for Rehabilitation.

15. She was also diagnosed with Hypotension as early as April 14, 2017, in Ms. Kober's discharge summary from rehabilitation at Mount Vernon Hospital. On July 17, 2017, Dr. Smith, her cardiologist discontinued metoprolol due to her low blood pressure. Her diary from home documented from June 10, 2020, through October 12, 2020, showed orthostatic hypotension.

16. The Hypotension led to a history of near syncopal episodes in her office visits to her physicians. Even though Unum contends that her blood pressure reading was normal at her office visits with physicians, one needs to consider that Ms. Kober was diagnosed with white coat hypertension prior to 2017.

17. She was referred to Dr. Cingolani at Johns Hopkins Medicine on August 17, 2019, and October 30, 2019, for her continued hypotension. She was given two different medications and instructed to take salt tablets to address her hypotension. The cause of her hypotension is unknown currently.

18. She also suffers with impaired memory and cognitive function. She sought treatment for this on April 25, 2018, with neurologist, Dr. Kulkarni. She noted that she had memory problems when she returned to work following her surgery in 2017. Dr. Kulkarni requested a CT scan and an MRI scan of her brain and sent her for an EEG.

19. Ms. Kober also had two sessions of neuropsychological testing with Dr. Henley. The first testing in May and June 2018 that showed significant deficits in the memory. Cognitive therapy was recommended. The second testing in June 2020 showed continued significant deficits in the memory despite cognitive therapy. Dr. Henley noted that her cognitive disabilities were a significant disability and he recommended support through disability services. He also recommended psychotherapy. Dr. Henley wrote an additional letter on October 13, 2020, to Unum outlining her cognitive impairments.

20. Ms. Kober had fatigue and lethargy during and following rehabilitation at Mount Vernon Hospital. She also had complaints of fatigue on her annual medical exam with Dr. Hwang on 9/5/18. Even though it is estimated that 50% of patients with primary biliary cholangitis have fatigue, Ms. Kober had complaints of fatigue prior to her diagnostic testing, referrals, procedures, and diagnosis of primary biliary cholangitis in 2020. The letters from her family repeatedly speak to Ms. Kober's fatigue on activities of daily living.

21. On December 4, 2019, Ms. Kober had a near syncopal episode in the waiting room of Dr Hwang which was attributed to pain.

22. On December 20,2019, she was seen by her cardiologist, Rahsaan Cain Smith, for the syncopal event in her doctor's office and one episode since. Dr. Cain Smith ordered an ultrasound of her Carotid Arteries which found a 50% stenosis or narrowing of the arteries.

23. On February 20, 2020, she completed a report on her daily life, she noted that she mostly had to spend the day in bed with her legs raise because of her leg swelling if she sits or stands. She noted she needed help with driving for any trip over 20 minutes; family members cooked, cleaned, and shopped.

24. In June 2020 she had a psychological evaluation which revealed significant deficits with working memory and processing speed. Further testing showed very weak performance with multiple areas of marked deficit. Most areas fell well below the average range. Diagnostically, testing

4

revealed similar results from prior testing with mild deterioration in her performance. Testing showed her prior performance was much better and concluded that the cognitive impairments are a significant disability.

25. On July 28, 2020, she saw Dr Robert Nussbaum for gallstones and a liver lesion, A blood test was positive for primary biliary cholangitis and a cystic lesion on the pancreas and recommended a liver biopsy and a biopsy of the pancreas cyst.

26. She saw Dr. James Lewis at MedStar Gastroenterology at Georgetown which noted primary biliary cholangitis, pancreatic cyst, hypercholesterolemia, and cognitive impairment.

27. On October 13, 2020, Dr. Anthony Henley, Psy. D. wrote that there had been two neuropsychological exams and "Both of those sets of testing documented the presence of significant cognitive impairments" following the surgery in 2017.

28. Dr. Henley specifically found that her memory deficits were particularly marked and were severely impacted by fatigue which exacerbates her symptoms, resulting in even more debilitating impairments. her condition.

29. Ms. Kober has not been able to work since February 16, 2017. Her Physician, Dr. Sarin advised her to stop working on March 14, 2017.

30. Dr Smith advised her to stop working as of February 17, 2017.

31. On August 27, 2017, she attempted to return to work full time, but she had to stop working again on February 14, 2018, per Dr. Smith's orders on February 15, 2018.

32. Since that time, she has been completely disabled and cannot work She is completely disabled from any occupation and is entitled to the insurance her work has earned her.

33. Her Long-Term Disability Benefits were terminated on May 13, 2020, and she duly appealed the termination on October 19, 2020.

5

34. The Appeal was denied by UNUM on January 14, 2021. The denial exhausted her administrative remedies, and the case is now ripe for Judicial resolution

## COUNT I
### *(Failure to provide benefits under ERISA)*

35. Ms. Kober realleges and incorporates by reference paragraphs 1 through and including 34 above.

36. The Disability Insurance coverage provided to Ms. Kober was part of an "employee welfare benefit plan" within the meaning of 29 U.S.C. §1002(1) in that the Williams & Connolly Plan established and maintained for the purpose of providing its participants or their beneficiaries Disability Insurance through the purchase of insurance.

37. Ms. Kober was a "plan participant" of the employee welfare benefit Plan established and maintained within the meaning of 29 U.S.C. § 1002 (7), in that she was or reasonably expected to become eligible to receive Disability Insurance from the UNUM Plan.

38. UNUM is a fiduciary with respect to the IPA Inc. Plan within the meaning of 29 U.S.C. §1002(21).

39. Ms. Kober complied with all terms and requirements of the Plan in requesting Disability Insurance and providing UNUM with information documenting her disability.

40. UNUM violated the requirements of ERISA, 29 U.S.C. §1132(a)(1)(B) by failing to provide benefits under the Plan for which Ms. Kober was eligible despite her request for benefits.

41. Because the Policy and Plan documents applicable to Ms. Kober do not contain a valid reservation of discretion to UNUM to adjudicate this claim, this case should be reviewed *de novo*.

42. Even if the deferential standard of review did apply in this matter, the denial of benefits by UNUM was and is arbitrary, capricious, and not made in good faith, unsupported by substantial evidence, an abuse of discretion, erroneous as a matter of law and in violation of ERISA.

6

43. As a direct and proximate result of the actions of UNUM, Ms. Kober has not been paid benefits.

44. As a direct and proximate result of the actions of UNUM, Ms. Kober has been caused to incur attorney's fees in an attempt to secure payment of Disability Insurance justly due to her.

## COUNT II
### *(ERISA violation - no full and fair review)*

45. Ms. Kober realleges and incorporates by reference paragraphs 1 through and including 44 above.

46. The Insurance provided by the Plan to its employees is part of an "employee welfare benefit plan" ("Plan") within the meaning of 29 U.S.C. §1002(1) in that the Plan was established and maintained for the purpose of providing its participants or their beneficiaries Disability Insurance through the purchase of insurance.

47. UNUM is a fiduciary with respect to the IPA Inc. Plan within the meaning of 29 U.S.C. §1002(21) in that it exercises discretion with respect to decisions regarding benefits and administers the Plan.

48. Ms. Kober was at all relevant times, a plan participant of the employee welfare benefit Plan established and maintained by the Williams & Connolly Plan within the meaning of 29 U.S.C. §1002(7), in that Ms. Kober was eligible to receive benefits from the employee benefit Plan.

49. UNUM violated ERISA by failing to provide the full and fair review required by 29 U.S.C. § 1133. UNUM failed to fully consider all the evidence submitted.

50. UNUM's paper only file review of the relied on biased and self-serving statements of employees and paid reviewers. without any individual verification of the facts. UNUM also failed to inform Ms. Kober of her rights under the Plan and what would be reasonably necessary to conduct a full and fair review. Therefore, UNUM made it impossible for Ms. Kober to address the issues raised by UNUM or for her to rebut UNUM's self-serving opinions and therefore impossible for her to perfect her claim.

## **COUNT III**

### CLAIM FOR EQUITABLE RELIEF

51. Ms. Kober realleges and incorporates by reference paragraphs 1 through and including 50 above.

52. Congress designed ERISA to promote the interests of employees and their beneficiaries in employee benefit plans. Plan fiduciaries are obligated to discharge their duties with respect to the plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries.

    53. The ERISA fiduciary duty includes the common law duty of loyalty which requires the fiduciaries to deal fairly and honestly with beneficiaries. It also imposes an affirmative duty on the fiduciaries to convey complete, thorough, and accurate information that is material to a beneficiary's claim and circumstance.

54. This obligation on fiduciaries includes an obligation to reasonably explain to plan participants and beneficiaries the material terms and conditions of the relevant plan documents and provide them with adequate notice of what they need to do to continue the basic life insurance coverage.

55. UNUM was the Claims Administrator for the Plan and was responsible for the payment of benefits. All three were fiduciaries obligated to act in accordance with the terms of the Plan and in a manner consistent with their fiduciary obligation to Rebecca Kober as a Plan participant and she relied on these defendants to honor her reasonable expectations and wishes to maintain her insurance coverage, act prudently in doing so, and give her honest and accurate information material to keeping this coverage as she coped with her illness. UNUM failed in this regard and breached their fiduciary obligations to Ms. Kober.

56. Termination of Ms. Kober's insurance claim was in defiance of her expressed desire and resulted in harm to Ms. Kober. Unum's respective breaches resulted in the loss of the insurance benefits provided under the Plan

57. Rebecca Kober thus seeks appropriate equitable relief from the fiduciary breaches of UNUM.

58. This relief includes but is not limited to (1) an equitable surcharge for unjust enrichment to recover the benefits withheld and to make the ERISA beneficiary whole, (2) reformation of the Plan to the extent needed to equitably address and pay her claim, and (3) waiver or equitable estoppel preventing UNUM from relying on the change of definition as grounds for denying her claim. Ms. Kober seeks any other equitable relief the Court deems necessary and proper to protect her from a loss from such violations, all pursuant to 29 U.S.C.§1132(a)(3).

## REQUEST FOR PREJUDGMENT INTEREST & AN ACCOUNTING

59. Ms. Kober realleges and incorporates by reference paragraphs 1 through and including 58 above.

60. Rebecca Kober requests, in addition to the amount of benefits withheld, prejudgment interest on any such award. She is entitled to prejudgment interest as additional compensation, and pursuant to Virginia Code 8.01- 382, or on principles of equity.

61. Unum's policy does not contain a rate of interest payable on the benefit amount wrongfully withheld. Resort must be had to Sec. 8.01-382of the Virginia Code. Ms. Kober thus requests an accounting in order to determine the amount earned on the funds that should have rightfully been paid to her, and in accordance with the Virginia Code.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Ms. Kober, demands the following relief against UNUM:

A. A declaration that UNUM is obligated to provide Ms. Kober with Disability Insurance benefits;

B. That Ms. Kober be awarded Disability Insurance benefits as provided under the UNUM policy; plus, pre-judgment interest from the termination date of May 13, 2020, to the present;

9

    C. A declaration that UNUM is obligated to provide Ms. Kober with amount equal to the Disability Insurance proceeds and interest;

    D.    That Ms. Kober be awarded reasonable attorneys' fees in addition to litigation expenses and costs; and

    E.    Such other and further relief as this Court deems just and appropriate.

Respectfully submitted,
MS. REBECCA KOBER

By: /S/ *[signature]*

Richard D. Carter
Attorney for Plaintiff Rebecca Kober
RICHARD D. CARTER
416 Jefferson Street
Annapolis, MD 21403
Telephone: 703-549-0076
Facsimile: 703-542-1273
rcarter@richcarterlaw.com